Our first case today is 2016-1277 TomTom v. Adolph. Ms. Payton, please proceed. Good morning, Your Honors, and may it please the Court. We are here today after the District Court determined that TomTom did not infringe Dr. Adolph's patent based upon TomTom's third motion for summary judgment of non-infringement. In doing so, the District Court made two types of errors. In the rule brief at 38 and 39, you say that while Dr. Adolph didn't agree with the District Court's initial construction of the subject limitation, you chose not to appeal that construction because you believe he could show infringement under it, under the construction? That's right, Your Honor. Why should we not find that you waived the opportunity to challenge the District Court's construction of the limitation? For several reasons. First, the District Court actually changed its construction on remand when applying that construction to the facts of the case, so we now are here under a new construction. We did appeal the embedded issue of node, and this Court determined that node is a geographic location, so the District Court should have implemented that embedded change on remand, but it chose not to do so. The last point relates to this Court's jurisdiction. The parties are not responsible for, nor can they bring issues to this Court where they believe it doesn't actually affect the outcome of the case. That's the Jane decision. Here, we had sufficient non-infringement arguments based upon the original construction. We provided those in response to summary judgment, and when the parties stipulated on various… We can appeal an erroneous construction. Your Honor, we can appeal a faulty construction. In fact, we did so with the embedded node limitation. When we look at the aspect of the construction that was most problematic, it was the node's PJPK section, which the District Court decided meant to include all most characteristic nodes and dropping all intermediate nodes. If the District Court had implemented this Court's direction on remand, it would have fixed that issue, and the parties would have been able to move on and, in fact, did not do so. It stuck with its original construction and, in fact, adopted a more narrow construction in which, in order to show infringement, Dr. Adolph had to show not only that only and all the most characteristic nodes be chosen, but that all intermediate nodes be dropped. That happened on the first time on remand when the Court actually applied its construction under Step 2. That's when it became clear that it had actually construed its construction in a manner that was more narrowing. There's no waiver issue. In any event, since there's a revised construction here and the Court failed to include node, we are here properly before the Court with a ripe issue based upon a new construction. With respect to the problems with the selecting clause, Dr. Adolph believes that a plain and ordinary meaning... You can attest the construction from the original Markman? In the sense of the node, PJPK? Selecting from the travel distance data the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section. I'm not sure I understand Your Honor's question when you say... Did you contest that construction? We did in the sense that we appealed the term node. Node PJPK, it's a clause within the selecting clause. There are several sub-clauses within the limitation. We appealed one of those sub-clauses, not all of them. With respect to the plain and ordinary meaning, Your Honor, we believe the plain and ordinary meaning applies here for several reasons. How could we possibly have plain and ordinary meaning for this clause? I mean, it contains a lot of words that don't make sense unless you construe them in the context of the patent. Your Honor... Are you really expecting a jury to read that without any direction from the Court? Actually, that's what we're intending to do with our proposal of the plain and ordinary meaning, to use more common language that jurors can approach. That's different than this concept of claim construction where there's an ambiguity or an issue with the claim that requires that you do something in light of the specification language for the prosecution. What do you mean, use more common language? You're saying, don't construe this, and then we're going to get our expert up there to try to sway the jury because we're going to give our own informal construction to them and have them believe us. I mean, wouldn't we reverse the district court for not construing this and not setting the boundaries of the patent if this language isn't clear? Your Honor, this gets to... Why don't you talk about why that construction's wrong? Certainly, Your Honor. To the point about plain and ordinary meaning, my understanding from this Court's jurisprudence is it can modify and simplify the language without deciding that there's lexicography or disavowal. And that's the plain and ordinary meaning. And there can be changes to the claim language to make it more approachable to the jury. So that's what we're asking this Court to do, Your Honor. The concept of lexicography and disavowal or representations made to the prosecution... You don't only need claim construction when you have lexicography and disavowal issues, do you? Those are the primary examples. So another is prosecution history. If there is a representation made in an argument or otherwise to obtain certain claims, then a party can't recover what it has given up. But those are not the situations here, Your Honor. We have to look at the specification, the dependent claims, and the entire intrinsic record. And in this particular situation, it's not appropriate to limit the claim the way that the district court did in light of that intrinsic record. And that's the claim construction issue that we're putting before the court. It's a limitation issue rather than a clarification issue. And I think that's the line that we're trying to walk between plain and ordinary meaning that is helpful to the finder of fact, who's dealing with a complex technology admittedly involving... Let's assume I disagree with you and think this needs to be construed. What's the proper construction? I don't see you have ever proposed a construction beyond just saying plain and ordinary meaning. Whether you call that plain and ordinary meaning or a construction, it's a simplification of the language, Your Honor, because we don't believe that further limitation or importation is necessary. The claim is very... Let me ask you this again. What's wrong with the district court's construction? We're in appellate court. We're reviewing what the district court did. You have to convince me that the district court is incorrect. What's wrong with the construction? It imported limitations that... Which ones? The limitations relating to node and the limitations relating to the contiguous relationship between sections. Those are the two erroneous constructions that we are appealing. Both are embedded within the selecting clause. With respect to node PJPK, that particular clause, the district court imported and mischaracterized column 10, and it stated in its analysis of the claim construction... Can we just talk about the construction? Certainly. The construction, you know what the construction is. What language in that construction do you think is wrong? The language in the construction that is wrong is all the nodes that are most characteristic of a road segment and dropping all the intermediate nodes of that segment, whereby the end of one section is the start of the next section. That is the erroneous part of the construction. So how would you define data nodes PJ and PK, which define contiguous sections, PJ and PK? Your Honor, we would define it as selecting at least two nodes that define a continuous road segment traveled by the mobile unit. So two geographic locations, right? The district court has already said that nodes are geographic locations. That's all that Claim 1 requires. When we look at the dependent claims, they add additional limitations to section data and additional aspects that should be written down. Even if we agree with your proposed claim construction, I don't see, and maybe you can help me, how that would create a question of fact on the infringement point. The TomTom devices, I understand it, were only talking about it losing a signal when it comes to maybe a dead zone or something like that, or how it stops taking a signal after 10 identical readings, like when you stop at a traffic light and you haven't moved. And so I don't know how that constitutes selecting, which is what this claim requires. So even if I agree with you on everything you say about nodes and the word contiguous and everything else, the way the accused device operates, it's not clear to me how you have any case left for infringement, even under the construction you would propose that we adopt. Your Honor, the device initially captures GPS location positions. That's travel distance data. That's Section 1 of the claim. From there, there is a decision that is made about which of those nodes should be selected for inclusion in section data. With respect to TomTom's activity on its device, as reflected in the Cayman data format file, TomTom will not select for inclusion in section data certain data points when it doesn't understand whether those data points are both accurate. That's the example with acquiring two initial data points that the device knows is accurate in order to start selecting data for inclusion in the section data file. That's one example. Another is if you're sitting at a stoplight using a TomTom device and you're sitting there for more than 10 data acquisition points. The device continues to keep that location and log that location information under Step 1, but it's not included in the section data because it's not characteristic. It doesn't help us understand the route network and where the car is traveling. It's a way to compress the data and use usable and useful information and exclude or not select data that the device does not find useful. Once the car starts moving again and it has at least two good signals, then it will decide to continue to import that information into the section data. That is a selection activity. It is an activity that's consistent with the claim and it's an activity that's consistent with the specification when it talks about compressing the data and using the useful information relating to the route network. There are also situations in which there are bad... I don't understand how that, what you're describing is selecting data nodes which define contiguous sections. It sounds like they're selecting data, if they're selecting data at all, rather than just ignoring the faulty data, but it doesn't have anything to do with data nodes which define contiguous sections. Your Honor, when you're talking about contiguous sections, are you talking about within a section or between two different sections? Well, your claim calls for selecting from the travel distance data nodes PJ and PK which define contiguous sections PJ and PK. The fact that they may drop certain things within the section doesn't mean that that's just selecting data nodes that define contiguous sections. Your Honor, to be clear, when I say drop, I mean they do not, there's a decision that's made not to include it within section data. It still exists there as part of travel data, but it is not selected for incorporation in the section data file that's ultimately stored to reflect the route network. That is the non-selecting or dropping activity. Remember, we have two streams of data. We have the data that's acquired from the satellite that happens no matter what. It's collected even if the data is bad. And TomTom's information tells us that they actually provide an accuracy reading with each and every satellite reading that's recorded. That's travel distance data. Not all of that information is selected for long-term storage in the section data file. And I've given Your Honor examples. We can talk about it in the context of dropping. We're well into your rebuttal time. Would you like to save it? I will. Thank you, Your Honor. Mr. Pandya. Please proceed. Good morning. May it please the Court, Brian Pandya on behalf of the appellee TomTom. Before I turn to the questions Your Honor raised, I want to make two points because these themes cut across the appeal. First, contiguous sections are not continuous points. Second, failing to record data does not equal selecting data from the travel distance data as the claim requires. With that in mind, the district court correctly found that Dr. Adolph's infringement case disregarded the very specific requirements of the type of data that must be selected and how that data is selected. So the judgment should be affirmed for three reasons, which I'll explain in more detail, but I'll summarize right now. First, Dr. Adolph converts the claimed contiguous sections into continuous points. If contiguous sections means multiple connected sections, not just the points within a single section, there's no infringement because Dr. Adolph's infringement case is in part based on situations where there are breaks in data recording. Second, the claim requires, as a matter of law, that two distinct steps are performed. First, you record a series of nodes or points called travel distance data that represent your traveled sections. Second, you must select from that travel distance data the starting and ending point of each section to create section data. The claim requires an affirmative selection of a starting point and an ending point of each section. And third, there's no dispute about how the TomTom navigation device operates. The device records its starting point and then it records its change in position until the trip ends or its signal is lost. Now, the only evidence that Dr. Adolph presented to the district court related to mishaps where the TomTom device failed to record data, the district court correctly found that no reasonable juror could find that failing to record data was the same thing as recording a series of points that form travel distance data and then selecting the two points for each section. Let me address first the contiguous sections argument. Contiguous sections and continuous points are two different concepts. Contiguous refers to multiple sections sharing boundaries. My left hand is contiguous with my right hand right now. Continuous refers to one set of points that form a straight line. Contiguous describes the relationship between the sections. So the claim requires contiguous sections, not continuous points for three reasons. First, looking at the plain language of the claim itself, the claim requires selecting from the travel distance data nodes PJ and PK, which define contiguous sections PJ, PK. The claim requires contiguous sections in the plural, not a single section, not one continuous section. Second, the prosecution history confirms this understanding of the claim. Dr. Adolph distinguished his invention over the Sado prior art reference by saying that, quote, additional sections are stored in a contiguous fashion in order to store the route connecting the initial starting point of the vehicle to the final destination in the same office action. The quote I just gave was at 8252. At 8256, Dr. Adolph distinguished another piece of prior art saying that, unlike his invention, the prior art reference, quote, does not generate or store any information relating to the contiguous sections connecting the stored points. Well, other than metaphysically, I can't imagine that you could have a contiguous section without another section with which it would be contiguous. Yes, that's correct. That kind of goes to the heart of what I'm saying, that because the point of this patent is to first record data where you've traveled, then you go back and do the second step. You analyze those data points to take the key points that connect the route, how you got from point A to point B. I agree with that. It kind of echoes what Dr. Adolph told the district court back in 2013. He said, and this is at A1413, he said that, quote, by definition, if there was a break in the location reading, such as if the GPS signal was lost in a tunnel or otherwise due to a loss of satellite coverage, the nodes before and after the break in the travel distance data readings would not be contiguous. He also addressed a couple of comments Ms. Payden made about how the TomTom device operates. The parties are in agreement about how the device operates. The device records the vehicle's starting point, and then it records its change in position every one second or five seconds later. Now, the three instances that Dr. Adolph presented to the district court were instances where the device failed to record data. But a mishap, failing to record data is not creating travel distance data. That was where the tunnel discussion came up. That was where the tunnel discussion came up. Correct. That was one of the instances. So failing to record data is not the same thing as creating travel distance data than selecting the points to create section data. Same thing with the argument that the device obtains its GPS signal then decides to record it. Well, in that instance, what the claim requires, so it needs to map to the claim, and it's first creating travel distance data, a series of points, a series of nodes that represent the sections you have traveled. Then you select the key points, PJ and PK. Have you abandoned your waiver argument? I'm sorry, Your Honor? Have you abandoned your waiver argument? We have not, and so here's the crux of our waiver argument that we briefed. I don't understand. You suggest that they waived a claim term that was not subject to the stipulation below. I have the stipulation here. It's on 1684. They did not stipulate to non-infringement on the basis of the selecting term. That was not part of the stipulation. So the term that's on appeal now had no impact on the stipulated judgment below, and yet you say they waived it. In fact, I think our case law is very clear that they didn't even have a right to appeal it. They appealed it, and we could have had the discretion to address it in the interest of judicial economy if we so chose. But given that it did not form any portion of the basis of the judgment below, I find your argument to be on the borderline of frivolous that they waived it. So please explain to me why it's not. Here's the reason. So TomTom moved for summary judgment on the terms that the court construed in its claim construction opinion in 2014. The selecting step was one of the- Yes, you moved for summary judgment, but you didn't follow the summary judgment through. Instead, you stipulated to a judgment with the court entered that did not depend on that term. Right. So we understood that they were challenging the construction of nodes, but not the broader selecting step. That wasn't part of the stipulation. Why would they challenge on appeal the selecting step when the selecting step formed no basis of the stipulated summary judgment of non-infringement? Right. I agree with that. How could they have waived it? How could they have waived their right to appeal now when it actually affects the outcome, something that they didn't bring before when it had no impact on the outcome? Right. So we understood that by not bringing it forward in the first instance, they were not challenging that construction. They disagreed with- You mean they waived it at the district court, not on the first appeal. Right. They waived it by- I don't see how you read the stipulation that way, though. I mean, honestly, if they had brought up that construction to us on the first appeal, at least I think it's likely we would have said, this is not part of this appeal. You want us to render an advisory opinion, and we're not going to do it. And I think you would agree that if we said that, they'd have the right to preserve that objection and challenge it now. I would agree with that, yes. So it seems like your position is they have to ask for an advisory opinion to preserve their right to appeal. That can't be the law. That's not the law, and that's not what we argue. And maybe I should take the clue and move off this argument. Our argument is that the stipulation was what- we understood those were the terms that they disagreed with in the claim construction opinion, and by not stipulating on that term- Only because the stipulation expressly says at the end that the parties reserve their right to appeal other rulings that don't form the basis for this finding of non-infringement described in this stipulation. So they expressly reserve their right to appeal other claim constructions that aren't discussed in the stipulation. Right. So how could this have, in your mind, represented an understanding that everything not in the stipulation is waived by them? When they expressly reserve the right. Well, the reason- again, the reason it did was in paragraph 8, it said that selecting was one of the terms, and we thought their disagreement was with the embedded term node, but not with the broader selecting term. But that was why we believe that that was now the law of the case. But in any event, the court's construction is- I believe it's a correct construction of what selecting requires, and the couple minutes I have remaining, I'll address that point as to why the district court's construction of selecting is correct. Why is the inclusion of the language about dropping the intermediate nodes a proper construction? It seems to me the rest of it is okay, but the dropping the intermediate node seems to read in things from the specification. I mean, that's what the invention was supposed to do, but I don't get that necessarily from the claim term itself. Right, and that's a good question, and the reason that's correct, though, is it goes part and parcel with the selection. So this is a two-step claim, and so you're first recording the travel distance data, PI, the set of points PI, then you select the points PJ and PK, and so the only points that get promoted to section data are the two points PJ and PK, and as district court said in footnote eight of the opinion, dropping does not necessarily mean that you're deleting the points that are not selected. Rather, what it means is that those points have not been chosen to be promoted to section data. They could remain travel distance data. They could- The dropping's a little imprecise, but what I think you're saying is selecting implicitly means picking out the two points that define the contiguous section and not using the rest of them within that contiguous section. Yes, that is correct, yes. So what dropping effectively means is that the travel distance data is a whole series of points. The section data is only the selected points, and the points that were not selected that aren't promoted to travel distance data, they have, in essence, been dropped. Why isn't that what happens when you come to a stoplight and you have ten consecutive recordings at the same point? It ceases to be characteristic of the road traffic and you're just sitting still, so you all stop recording them is my understanding. Why couldn't that, as a factual question, be dropping the intermediate nodes in that segment? Because in your honors, in that example, you're still recording the points that you're traveling. So the device, it stops, records ten zeros, then the recording shuts off. So the zeros are never deleted from the device, then the device stops recording its data. It's not what the claim requires. Well, when you stop recording, why isn't that dropping the intermediate nodes of that segment? When you stop recording, I don't understand, from a factual standpoint, why it wouldn't be a question for the jury to decide whether stopping to record because you're stationary is, in fact, dropping intermediate node segments. Well, even if it is dropping intermediate node segments, which it's not because the zeros still remain in the data record of the device. Well, the zeros do for the first ten, but not 11, 12, 13, or however many more there would have been while you sit stationary. Right. You drop those. You do not record them. You do not record them, correct. Yes. So why is not recording them not equivalent to the claim construction of dropping those segments? Well, even if it is dropping, the problem is it doesn't read on the entire claim. What the claim requires is first recording travel distance data, a series of points where you have traveled, then deciding I'm going to select PJ, my starting point, PK, my ending point. When you move off of a stopped position. Correct. The TomTom device then records a signal, a piece of data. And it appeared to me that that piece of data says there are no more zeros. That is, what it's doing is saving space in effect. That it would be continuous zeros until that one, or whatever it would be, I would guess it would be a one, is the next piece of data. Am I not correct on that? Yes, you are correct. So in effect, it's saying the data is, it would be an infinite number of zeros until we hit one. Correct. So what's happening, though, is you're simply recording where the vehicle has traveled. You're never making an affirmative selection of points PJ, PK. You're recording, I travel, I hit a red light, record zeros, I start recording again. So there's no selection of the points that define a roadway. It's simply straight data recording, which the patent admits in columns one to three. What I'm saying is, if after ten zeros your next piece of data is a one, that you've simply recorded all the zeros you choose to record, but it would be infinite zeros until that one, and your machine knows that it would be zeros until that one appears. So in effect, you are recording. Correct. So in effect, you're recording zeros, and then when the device starts again, you start recording again, but it's not creating travel distance data from which you're then, so what's missing here is still the second step of the claim, where you take your whole body of data and then you extract the PJ, PK points for each section. This is just simply it records until it realizes nothing's happening. Then the device turns back on again. Do you record at timed intervals? Is that how the TomTom device works? Yes. What is the time in between intervals for recording purposes? It's either one second on newer models, five seconds on older models. Five seconds. So if you come to a stop sign or a stoplight and you're sitting there for a while, it records ten zeros every five seconds. You're there for 50 seconds, okay? Okay. So then the next ten seconds, it's not recording anything, but you're just stationary. Correct. Then you start moving. It does not immediately turn back on, correct? It could be up to five seconds before it takes the next recorded blip to determine where you are. So for five seconds, probably doesn't take me longer than that to get across most intersections, it's not recording. It is not recording, correct? It then picks me up at the five-second interval. Yes. Yes, so what the device is doing is simply it's recording when you're moving. It records when you're stopped briefly. No, it doesn't always record when you're moving because I moved across the intersection and it wasn't recording for five seconds. Right, except for that latent period where there was one to four, five seconds where there was nothing. But the point is, this is just straight data recording, which has existed for a long time as the patent itself admits in the specification of the prior art. What's missing here is the affirmative selection of the two points, PJ and PK, for each section. So you're saying essentially that even if the dropping language were in this claim construction, you still wouldn't infringe? Correct, because we went on, whether it be selecting, dropping, or contiguous, any one is sufficient to affirm. So can you explain to me contiguous sections PJ and PK? Because numerous times you've referred to PJ and PK as two nodes. PJ is one node and PK is a second node. Correct. So why isn't contiguous sections, like it talks about in 252 of the prosecution history, the distance traveled between PJ and PK, that's the contiguous section? I'm having trouble reconciling the plural word sections with the PJ, PK. This seems to be a proper noun almost, right? Contiguous sections PJ, PK. I don't know how else to understand it, but PJ and PK are individual points. So I'm having trouble understanding the concept of the plural word sections affiliated and linked to the PJ, PK notion. Let me try to answer that question by referring to what Dr. Adolph said in A252 and A256. What he said is that the purpose of his invention is you select your sections, and I agree, PJ, PK has to be one connected section, but then you form multiple PJ, PK sections that define the route that you took to get from the start to the end or wherever the trip ends. If I could just back up for one second to the traffic light example, too, that the claim requires selecting nodes, not just nodes that are in the travel distance data. So that's what effectively has to happen in the claim. Where on 252 is it that you were indicating that the word contiguous sections that Dr. Adolph meant that was multiple PJ, PK sections? Where is that? You pointed me to page 252 of the prosecution history. So the bottom of the first paragraph, the sentence that starts with likewise? That just says likewise additional sections are stored in a contiguous fashion. That doesn't say PJ, PK represents lots of sections, does it? You want me to read that prosecution history as requiring multiple PJ, PK sections? I thought PJ, PK is like a proper name. I thought of it as the nomenclature for a single section. So I don't understand where you're getting that from that sentence. Especially because the sentence right before it says, thus the claim specifically claims in its simplest implementation, it not only records the geographic location of points PJ and PK, but the fact that they are connected to each other, that there is a direction of travel from PJ to PK and a travel distance. Why isn't that the contiguous sections discussion? Well, it is a contiguous section. So with section data, the point here is to record the essence of the route that you've traveled. So what you're doing here is, of course, PJ and PK have to be connected because otherwise that would not be a traveled section. But then read in conjunction with the next sentence and how he distinguishes invention over the prior art, is additional sections are stored in a contiguous fashion because in order to store a route, connecting the initial starting point of the vehicle to the final destination. So there are two requirements. Internally, PJ, PK has to be a connected section. But to recreate where you traveled, each of the sections then have to connect together so you know the topology of the route, so you know how you got from A to B to C to D. Do you have anything further? I do not, unless the panel has any further questions. No, let's restore four minutes of rebuttal time. Ms. Payton, please. Thank you, Your Honor. I think it's first important to make some of the facts clear. TomTom's devices are logging GPS locations currently every second. It used to be every five seconds. It's since changed. They are logging it every second and storing it as travel distance data. That happens even if the data is bad. It does not stop if they're at a stoplight or in a tunnel. It continues, and it just records 0, 0, 0, 0 for accuracy. From there, there is a selection activity that occurs. There is a choice that is made about what data should be stored for the long term. And sometimes the data is not stored, as in the case of a stoplight, as in the case where we don't have two initial good data points. That is a selecting activity. It's consistent with the claim. It's consistent with the prosecution history. Whether we call it dropping, meaning not selecting for long-term inclusion, or we call it something closer to selecting, the result is the same. They have data, and they choose not to store it for the long term in the section data, and thus the section data file. But is that an intermediate node that's being dropped? If you're standing still, nodes are points from one section to the next, right? PJ is a node, PK is a node, the distance traveled between. If you are stationary at a stoplight, and you are not recording data, you're dropping something, you're dropping data, but are you dropping intermediate nodes of a segment? Because you haven't moved. You are, Your Honor, because the segment can be defined in a number of different ways as described in the specification. The PJ could be your starting point when you leave your driveway in the morning and you go to work. The device chooses not to record data when you're sitting at a stoplight for a period of time. PJ to PK, PJ is a node, PK is a node. Yes, Your Honor. PJ, PK is a section. PJ, PK is a mathematical designation for a section. That's right, Your Honor. What's the next one? There's another mathematical section. And what's it called? PJ, PK. You answered my question. With respect to, and this is a mathematical concept, Your Honor. So your opposing counsel was correct in what he said when he said the next section is PJ, PK. It is designated in the patent as another PJ, PK. And, in fact, if we look at column 10. I mean, that's implicit in the definition, right, of contiguous, that there has to be more than one section to have a contiguous section. Well, there's the continuity within a section, right? And we talk about 252, the prosecution history, where Dr. Adolph talks about the fact that the points PJ and PK are connected to each other, right? They're within the same section. And the PJ, PK designation is for a section. Right, but when you use the plural, contiguous sections, you're implying more than one section that are contiguous to each other. Actually, no, Your Honor. Contiguous modifies sections PJ and PK. And then we have step three that talks about storing additional sections, updating the existing section data file. So the patent envisions a multi-step process in which we continue to build a route network. We create a section. We store it in the section data file. We create another section. We store it in the section data file. I'm sorry, Your Honor? The next one is contiguous to the prior one. It can be, but it doesn't have to be, right? So here's an example of an operating system where TomTom is going around a curve, a cloverleaf, if you will. That's a situation where you may not have intermediate nodes, but as described in Column 10, those are very characteristic nodes that we're looking at because they show a change of direction, a significant change of direction. As described in Column 10, at least some of the sections include more than two nodes, right? But that doesn't mean that all of them include more than two nodes. So we can have situations in which PJ, PK are the starting node and the ending node as we're going around a turn. And the next section arises as we continue with our change in direction. But the operative point here is when we talk about the infringement analysis, we have to understand that as long as the device operates at some times under conditions that meet Claim 1, TomTom infringes. What the district court did is it turned... What you didn't answer for me then is why... You're going around the cloverleaf. Yes, Your Honor. Why is the next section not contiguous to the prior section? It is, Your Honor. That's the point. That is an operating condition under which the sections are contiguous to each other. So even if this court finds that continuity not only exists within each section, PJ, PK, but also between sections, there are still operating conditions under which TomTom infringes, even under that construction. Okay, counsel. I think your time is up. Thank you. Thank you both, counsel, for their argument. The case is taken under submission.